**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

ADDYSON WOODS, :

                              Plaintiff,

-vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
                              Defendant. :

Case No. 3:08-cv-040

District Judge Thomas M. Rose
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial

2

gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on September 2, 2003, alleging disability since June 15, 2002, due to anxiety, depression, upper and lower back pain, pain in her legs, knees and hips, migraine headaches, thyroid problems, sleep problems, and arthritis. (Tr. 53-55; 64). Plaintiff's application was denied initially and on reconsideration. (Tr. 37-40; 42-44). An hearing was held before Administrative Law Judge Thaddeus Armstead, (Tr. 300-46), who determined that Plaintiff is not disabled. (Tr. 14-28). The Appeals Counsel denied Plaintiff's request for review, (Tr. 4-6), and Judge Armstead's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Armstead found that Plaintiff has severe undifferentiated somatic disorder, dysthymia, a recurrent mild depressive disorder, a personality disorder NOS, and mild degenerative spinal changes, but that she does not have an

3

impairment or combination of impairments that meets or equals the Listings. (Tr. 26, finding 3). Judge Armstead also found that Plaintiff has the residual functional capacity to perform a limited range of medium work. (Tr. 27, finding 5). Judge Armstead then used section 203.29 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (*Id.*, findings 11 and 12). Judge Armstead concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 28).

Treatment records from Plaintiff's treating physician, Dr. Gardner, reveal that he treated Plaintiff from 1998 through at least June 19, 2006. ( Tr. 171-218, 278-92). In November 2003 Dr. Gardner reported that Plaintiff's diagnoses were thoracolumbar back pain, hyperthyroidism, depressive-anxiety, and recurrent cephalgia–mixed migraine/tension, that she was under the care of a psychiatrist, had not tolerated attempts at physical therapy, and that she was unlikely to perform sustained work activities due to the exacerbation of her emotional and physical symptoms. *Id.*

On June 2, 2004, Dr. Gardner reported that Plaintiff's diagnoses were chronic low back pain and thoracolumbar back pain, controlled hyperthyroidism, chronic depression-anxiety, tension and migraine cephalgia, psychological factors affecting physical symptoms, and probable fibromyalgia, that she exhibited periodic increase in parathoracolumbar vertebral muscle spasms with tenderness, and that she could not lift, tug, push, or pull over 10 pounds, could not handle emotional stressors, and that she was able to operate a motor vehicle. *Id.*

By way of answers to interrogatories, Dr. Gardner reported on May 17, 2005, that Plaintiff was not able to perform most work-related mental activities. *Id.* In addition, Dr. Gardner

4

reported that Plaintiff was able to lift/carry up to 5 pounds frequently, stand/walk for 1-2 hours in an 8-hour day and for 15-20 minutes without interruption, sit for 4 hours in an 8-hour day and for ½ hour without interruption, that she was not able to perform continuous physical activity due to muscle spasm, that her emotional/psychiatric symptoms were at least as impairing, if not more so, than her physical symptoms, and that she was not able to perform either sedentary, light, or medium work. *Id.*

Examining physician Dr. Wunder reported on October 17, 2000, that Plaintiff alleged that she sustained a work-related injury on or about April 4, 2000. (Tr. 133-37). Dr. Wunder also reported that Plaintiff had numerous chronic pain behaviors, a normal gait, very slow transitional movements, and that she was stiff and guarded. *Id.* Dr. Wunder noted that Plaintiff complained of pressure in her back when attempting to stand on her heels, could squat through a full range of motion but was very slow coming to an upright position, had diffuse superficial tenderness to palpation throughout the cervical, thoracic, and lumbar areas, and that she had positive Waddell's signs for symptom magnification. *Id.* Dr. Wunder also noted that Plaintiff had give-way responses on manual motor muscle testing, and that her ranges of motion and straight leg raisings were normal. *Id.* Dr. Wunder opined that Plaintiff did not sustain an injury in April, 2000, and that her examination was inconsistent and more compatible with symptom magnification than any type of soft tissue injury. *Id.* Dr. Wunder also opined that there was no specific diagnosis that related to the alleged injury at work, that for any alleged injury at work that occurred 7 months prior, Plaintiff was maximally medically improved, and that Plaintiff has no restrictions and was capable of returning to her prior job duties. *Id.*

Examining psychologist Dr. Flexman noted on January 6, 2004, that Plaintiff had an

5

11th grade education, completed her GED, received a certificate for a computer course, and that she was seeing a psychiatrist every 2 months. (Tr. 138-41). Dr. Flexman also noted that Plaintiff's speech was appropriate, there was no evidence of receptive difficulties, her affect was dramatic with no lability present, she was anxious, blunted, and passive during the evaluation process, her immediate attention was good, her recent memory was only fair but her effort was poor, and that Plaintiff's abstract reasoning and concentration were good. *Id.* Dr. Flexman reported that Plaintiff's intellectual functioning was average, she lacked insight into the presence of psychological issues in her life, there was somatization present. *Id.* Dr. Flexman also reported that Plaintiff's response style during the assessment was suboptimal and her effort during mental status was only fair, and therefore "[t]heir reliability was judged to be poor and suggested significant malingering and distortion." *Id.* Dr. Flexman identified Plaintiff's diagnoses as an undifferentiated somatoform disorder, dysthymia, and a personality disorder NOS and he assigned Plaintiff a GAF of 60. *Id.* Dr. Flexman opined that Plaintiff had a slight impairment in her ability to understand, remember, and carry out short, simple instructions, a slight impairment in her ability to make judgments for simple, work-related decisions, a slight impairment in her ability to sustain concentration, a moderate impairment in her ability to interact appropriately with the public, and a moderate impairment in her ability to respond appropriately to work pressures. *Id.*

An MRI of Plaintiff's lumbar spine performed on April 28, 2004, revealed degenerative disc desiccation at L4-5 and to a lesser extent at L5-S1 with only mild disc bulging at L4-5, no focal herniations or areas of central canal stenosis or foraminal stenosis. (Tr. 199-200). An April 30, 2004 EMG of Plaintiff's lower extremities was negative. (Tr. 198).

On July 22, 2004, Plaintiff sought emergency room treatment for a complaint of low

back pain. (Tr. 143-44). At that time, examination revealed some mild paralumbar spasm, slightly more on the left than on the right side, and no point tenderness. *Id.* Plaintiff was given morphine which she stated gave her some mild to moderate relief. *Id.* Plaintiff was discharged with the diagnosis of acute exacerbation of chronic low back pain, currently resolving. *Id.*

A June 3, 2005, EMG and nerve conduction studies showed evidence of median neuropathy at the wrist and carpal tunnel syndrome, moderate on the right side and mild on the left side, and evidence of bilateral ulnar neuropathy which affected the right side more than the left. (Tr. 171).

Treating psychiatrist Dr. Balster reported on January 6, 2004, that he had been treating Plaintiff since October 1998, that she had previously seen another psychiatrist until he retired, and that she reported a longstanding difficulty with depression and reported a history of sexual abuse when she was a teenager and younger. (Tr. 245-46). Dr. Balster also reported that Plaintiff was alert and oriented, had a constricted affect, a mildly dysphoric mood, normal formal thought, and no delusions or hallucinations. *Id.* Dr. Balster noted that Plaintiff's diagnoses were recurrent major depression, panic disorder, mixed personality traits with cluster B predominate, that she had been able to work in the secretarial setting until she fell off a chair and injured herself, that medication helped with her anxiety although she continued to have multiple other somatic concerns and continued to see her primary physician for most of her needs. *Id.* Dr. Balster also noted that he saw her primarily for medication checks. *Id.*

On June 7, 2005, Dr. Balster reported that Plaintiff had been his patient since October 27, 1998, that she had a long-standing history of depression and sexual abuse when she was younger, and that she had on-going problems with panic attacks, migraine headaches, poor sleep, fatigue,

7

muscle weakness, and multiple somatic symptoms. (Tr. 219-29). Dr. Balster also reported that Plaintiff had great difficulty managing side effects of antidepressant medications, that she had multiple medication allergies, that her diagnoses were major depression and panic disorder, that she also displayed mixed personality traits with predominate histrionic traits, and that she showed some improvement with medications, but continued to be symptomatic. *Id.* Dr. Balster noted that Plaintiff had low energy, poor motivation, poor interest level, poor concentration, poor attention, and poor memory, and that she was not able to perform many work-related mental activities. *Id.*

In her Statement of Errors, Plaintiff alleges that the Commissioner erred by rejecting Dr. Gardner's and Dr. Balster's opinions that Plaintiff is disabled by the combination of her impairments. (Doc. 10).

In general, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540 (6th Cir. 2007), *citing, Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997) (citing 20 C.F.R. § 404.1527(d)(2) (1997)). In other words, greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Cruse,* 502 F.3d at 540 (alteration in original) (quoting 20 C.F.R. § 404.1502). However, a treating physician's statement that a claimant is disabled is of course not determinative of the ultimate issue. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given

controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

The reason for the "treating physician rule" is clear: the treating physician has had a greater opportunity to examine and observe the patient. *See, Walker v. Secretary of Health and Human Services,* 980 F.2d 1066, 1070 (6th Cir. 1992). Further, as a result of his or her duty to cure the patient, the treating physician is generally more familiar with the patient's condition than are other physicians. *Id.* (citation omitted).

While it is true that a treating physician's opinion is to be given greater weight than that of either a one-time examining physician or a non-examining medical advisor, that is only appropriate if the treating physician supplies sufficient medical data to substantiate that opinion. *See, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983); *see also, Bogle v. Sullivan,* 998 F.2d 342 (6th Cir. 1993). A treating physician's broad conclusory formulations regarding the ultimate issue of disability, which must be decided by the Commissioner, are not determinative of the question of whether an individual is under a disability. *Id.* Further, the Commissioner may properly reject a treating physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *Cf., Kirk, supra; see also, Walters, supra.*

In declining to give either controlling or deferential weight to Drs. Balster's and Gardner's opinions, Judge Armstead noted that each of the opinions relied almost exclusively on Plaintiff's subjective complaints and that the record provides a basis for questioning the reliability of Plaintiff's subjective complaints. (Tr. 22-23). Judge Armstead also determined that Drs.

9

Balster's and Gardner's opinions are not supported by the objective evidence and are inconsistent with other evidence of record. *Id.*

With respect to Dr. Balster's opinion, although he essentially determined that Plaintiff is disabled in that she is unable to perform most work-related mental activities, his clinical records do not support that conclusion. For example, Dr. Balster's clinical records reveal that he treated Plaintiff only every 1 to 2 months. *See, e.g.,* Tr. 230-58. In addition, those records indicate that over time, Plaintiff's mood improved, that overall, she was "doing well", and was "stable". *Id.* These contemporaneous observations are inconsistent with a conclusion that Plaintiff is totally disabled.

In addition, Dr. Balster's opinion is inconsistent with other evidence of record. For example, Dr. Flexman essentially determined that Plaintiff's response style and effort during the evaluation were questionable, that there was significant suggestion of malingering and distortion, and that Plaintiff was, at worst, only moderately impaired in some areas of functioning. Further, Dr. Balster's opinion is inconsistent with the reviewing mental health experts' opinions. *See,* Tr. 155-70.

Similarly, Dr. Gardner's opinion is inconsistent with his contemporaneous clinical notes, is not supported by the objective medical test results, and is inconsistent with other evidence of record.

First, although Dr. Gardner essentially opined that Plaintiff is disabled by her mental impairment, that conclusion is not within Dr. Gardner's area of expertise. Second, while he opined that Plaintiff is totally disabled by her alleged exertional impairments, Dr. Gardner's clinical notes do not support that conclusion. For example, Dr. Gardner documented, at worst, the presence of some muscle spasms. *See, e.g.,* Tr. 189-218; 278-92. In addition, as noted above, the objective test

results of record, specifically, EMGs and MRI, revealed, at worst, mild findings. Finally, Dr. Gardner's opinion is inconsistent with Dr. Wunder's findings and conclusions, which again suggested malingering and symptom magnification, as well as with the reviewing physician's opinion. *See,* Tr. 149-54.

Under these facts, the Commissioner had an adequate basis for rejecting Drs. Blaster's and Gardner's opinions.

Plaintiff also argues that the Commissioner erred by failing to find that she is disabled by the combination of her impairments.

The Act requires the Commissioner to consider the combined effects of impairments that individually may be nonsevere, but which in combination may constitute a medically severe impairment or otherwise evince a claimant's disability. *Foster v. Bowen,* 853 F.2d 483, 490 (6th Cir. 1988) (citation omitted). A disability may result from multiple impairments, no one of which alone would constitute a full disability. *Loy v. Secretary of Health and Human Services,* 901 F.2d 1306 (6th Cir. 1990). An ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a "combination of impairments" in finding that the plaintiff does not meet the Listings. *Id.* (citation omitted).

A review of Judge Armstead's opinion reveals that he consistently referred to Plaintiff's impairments in the plural. *See, e.g.,* Tr. 15, 19, 21. In addition, in determining that Plaintiff does not satisfy the Listings, Judge Armstead specifically referred to her impairments in combination. (Tr. 26, finding 3). The Commissioner did not err in this regard.

Plaintiff essentially argues that Drs. Balster's and Gardner's opinions support each

other and therefore support her allegations of total disability. The question, of course, is not whether the record contains substantial evidence to support Plaintiff's allegations of disability. Rather, the question is whether the Commissioner's decision that Plaintiff is not disabled is supported by substantial evidence. Additionally, for the reasons stated above, the Commissioner had adequate bases for rejecting both Dr. Balster's and Dr. Gardner's opinions.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

December 4, 2008.

*s/ Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C),

or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).